# UNITED STATES DISTRICT COURT
## District of Maine

STATE OF MAINE     )
 and          )
MAINE DEPARTMENT OF   )
ENVIRONMENTAL PROTECTION, )  **Civil Docket No. CV-04-191-B-W**
            )
    Plaintiffs,    )
            )
  v.         )
            )
KERRAMERICAN, INC., BLACK HAWK )
MINING, LTD. and DENISON MINES, INC., )
            )
    Defendants.   )

## CONSENT DECREE

WHEREAS, beginning in the early 1960's, Black Hawk Mining, Ltd. ("Black Hawk") and Denison Mines, Ltd. conducted mining operations in Blue Hill, Maine along the eastern shore of Second Pond ("Site");

WHEREAS, in the early 1970's, Black Hawk continued and expanded those mining operations at the Site in a joint venture with Keradamex, Inc., who subsequently assigned its interest in the joint venture to its wholly-owned subsidiary, Kerramerican, Inc. (collectively, "Kerramerican");

WHEREAS, mining operations at the Site ceased in the late 1970's and the Maine Department of Environmental Protection ("Department" or "DEP") approved of the closure of the Site by the joint venture in the early 1980's;

WHEREAS, after subsequent investigation of the Site in the 1990's, the DEP concluded that the mining activities of Black Hawk, Denison Mines, Ltd. and Kerramerican generated hazardous substances at the Site in such a manner that hazardous substances have been and may

continue to be released to the surface water and soils and groundwater beneath and adjacent to the Site;

WHEREAS, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., the Solid Waste Disposal Act, ("SWDA") including the Resource, Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et seq., and the Uncontrolled Hazardous Substance Sites Law, 38 M.R.S.A. §§ 1361 et seq., the State of Maine and the Department (collectively, the "Plaintiffs") assert that Black Hawk, Denison Mines, Inc., the successor to Denison Mines, Ltd. (collectively, "Denison") and Kerramerican are jointly and severally liable to clean up the Site, to pay Plaintiffs' Response and Oversight Costs and damages related to Natural Resource Damages because they are responsible parties who have owned or operated the Site, or transported wastes to the Site, or arranged to have their wastes transported to the Site, and have been notified by the Department of their potential liability with respect to the Site;

WHEREAS, Kerramerican has worked with DEP to study the Site and evaluate remedial alternatives to address contamination at the Site, including the preparation of a Remedial Investigation ("RI") report and a Feasibility Study ("FS") consistent with the National Contingency Plan ("NCP");

WHEREAS, DEP has approved both the RI report and the FS and a draft Remedial Action Plan ("RAP") was submitted to, and commented on by, DEP and a final RAP will be submitted for DEP approval within thirty (30) days of the Effective Date of this Decree;

WHEREAS, the DEP has undertaken certain response actions and incurred certain costs in connection with the Site, and anticipates spending additional funds for remedial activities pursuant to 42 U.S.C. §§ 9601 et seq. and 38 M.R.S.A. §§ 1361 et seq. (Response and Oversight

Costs);

WHEREAS, the DEP asserts and the Court finds that all Response and Oversight Costs incurred or to be incurred by the DEP are not inconsistent with the NCP, 42 U.S.C. § 9605, 40 C.F.R. Part 300;

WHEREAS, the DEP has made demand upon Black Hawk, Denison and Kerramerican for reimbursement of these Response and Oversight Costs as well as demanding that they conduct Remedial Action, as defined below, at the Site pursuant to 42 U.S.C. §§ 9601 et seq., and 38 M.R.S.A. §§ 136l et seq.;

WHEREAS, Black Hawk, Denison and Kerramerican have refused to make any contribution to the Response and Oversight Costs incurred at the Site and Black Hawk and Denison have refused to conduct any Remedial Action at the Site;

WHEREAS, the Plaintiffs filed an Amended Complaint against Black Hawk, Denison Mines, Inc. and Kerramerican (collectively, "Defendants"), at the above caption, seeking reimbursement of past and future Response and Oversight Costs incurred by Plaintiffs as well as injunctive relief to perform Remedial Action at the Site;

WHEREAS, the Defendants have each filed cross-claims and Third-Party Complaints, including Third-Party Complaints filed by Black Hawk and Denison against Keradamex Inc. and Falconbridge Limited (formerly Noranda, Inc.), the parent corporations of Kerramerican;

WHEREAS, EMSOURCE Blue Hill LLC ("EBH"), an entity with the experience and technical capability to undertake the Remedial Action at the Site is willing to assume the liabilities of Kerramerican and its parent corporations, Keradamex and Falconbridge Limited, (collectively, the "Settling Defendants") associated with the Site, including, but not limited to, liability for all Response and Oversight Costs as well as Remedial Action at the Site (including

post-closure activities) and Settling Defendants, upon the Effective Date of this Decree, will

provide EBH with funds which are expected to be sufficient to carry out these tasks and EBH has

provided financial assurance to the Plaintiffs demonstrating EBH's financial capability to satisfy

all of the liabilities of the Settling Defendants;

WHEREAS, in the interest of concluding all potential claims by Plaintiffs arising out of

or related to the Site and avoiding the expense of litigation, the Settling Defendants wish to

resolve, satisfy and conclude all issues of responsibility, financial or otherwise, for any and all

Remedial Action and past, present and future Response and Oversight Costs relating to the Site

without admitting any liability;

WHEREAS, the Court finds, and the Plaintiffs and Settling Defendants agree, that it has

jurisdiction over this action;

WHEREAS, the Plaintiffs and the Settling Defendants and EBH (the "Parties"), by and

through their representatives, each have agreed to the entry of this Decree without any further

findings of law or fact and expressly waive any rights of appeal with respect to this Decree;

WHEREAS, the Court has considered the pleadings and representations of counsel for all

Parties; and

WHEREAS, the Court finds this Decree to be a full, fair and reasonable disposition of the

Plaintiffs' claims set forth in this action against Kerramerican;

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED as follows:

## I. **PARTIES**

1.      <u>The Parties to this Decree are</u>:

A.      The Settling Defendants;

B.      The Plaintiffs; and

C.    EBH.

## II.  JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action and over the

Parties consenting hereto pursuant to CERCLA, 42 U.S.C. § 9613(b), RCRA, 42 U.S.C. § 6972,

the Maine Uncontrolled Hazardous Sites Law, 38 M.R.S.A. § 1365 and 28 U.S.C. § 1367.

3.    Venue is proper in this district pursuant to CERCLA, 42 U.S.C. § 9613 and 28

U.S.C. § 1391.

## III.  DEFINITIONS

4.    The following definitions shall apply in this Consent Decree:

A.    "Approved" means approved, approved upon conditions or modified by DEP.

B.    "CERCLA" shall mean the Comprehensive, Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

C.    "Commissioner" means the Commissioner of the Maine Department of

Environmental Protection.

D.    "Consent Decree" or "Decree" means this consent decree, including all figures,

attachments and appendices attached hereto and all reports, plans, specifications, schedules or

other documents submitted and approved pursuant to this Consent Decree.

E.    "Days" mean calendar days unless otherwise specified.

F.    "DEP" or "Department" means the Maine Department of Environmental

Protection.

G.    "Effective Date" means date of entry of this Decree.

H.    "Existing Contamination" means any Hazardous Substances, pollutants or

contaminants, present or existing on, under or emanating from the Site as of the Effective Date of

this Consent Decree comprising the contamination identified in the Remedial Investigation report approved by DEP on December 18, 2002.

      I.      "Feasibility Study" or "FS" means the study conducted by Kerramerican consistent with CERCLA and the NCP as well as DEP policy and guidance.  The FS fully developed, screened and evaluated in detail Remedial Action alternatives to prevent, mitigate, or abate the migration or the release of hazardous substances, pollutants, or contaminants at and from the Site and approved by DEP on June 3, 2003.

      J.      "Hazardous Substance" means any material identified as a hazardous substance pursuant to 42 U.S.C. § 9601 and 38 M.R.S.A. § 1362(1).

      K.      "Interest" means the rate of interest established pursuant to Section 107 (a) of CERCLA, 42 U.S.C. § 9607.

      L.      "National Contingency Plan" or "NCP" means the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R.  Part 300 (1997), including, but not limited to, any amendments thereto.

      M.      "Natural Resource Damage" means physical injury to or destruction of, including the resulting loss of value of, land, fish , wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources pursuant to sections 101 and 107 of CERCLA, 42 U.S.C. § 9601 and § 9607; the Clean Water Act, 33 U.S.C. §§ 1251, 1321(f); and the Maine Uncontrolled Sites Law, 38 M.R.S.A. § 1367.

      N.      "Plaintiffs" means the State of Maine and DEP.

      O.      "Remedial Action" means the remedies selected for all contaminated media as a result of the RI and FS and RAP conducted and prepared by Kerramerican, and subject to

approval by DEP, as well as any additional studies required thereby or under this Consent Decree and work resulting therefrom.

P.      "Remedial Investigation" or "RI" means that investigation of contaminated soils, groundwater and surface water at and near the Site conducted by Kerramerican consistent with CERCLA and the NCP, and DEP policy and guidance.  The results of the RI were set forth in the final RI report submitted by Kerramerican and approved by DEP on December 18, 2002.

Q.      "Response and Oversight Costs" shall mean all of the State's costs incurred by the Plaintiffs which are recoverable under 42 U.S.C. §§ 9601 et seq. and 38 M.R.S.A. § 1367, including, but not limited to, payroll costs, contractor costs, travel costs, responsible party search costs, laboratory costs, costs related to this Consent Decree including, but not limited to, the costs of reviewing or commenting on plans, reports or other items pursuant to this Consent Decree, verifying the Remedial Action, or otherwise implementing or enforcing this Consent Decree, and interest and indirect costs incurred with respect to the Site.

R.      "Settling Defendants" shall mean Kerramerican, Inc. and its parent corporation, Keradamex Inc. and Keradamex's parent corporation, Falconbridge Limited.

S.      "Site" shall mean the property identified in Attachment A as the Former Mine Site, Blue Hill, Maine, where the generation, handling and/or disposal of hazardous substances occurred and areas contiguous to the facility where hazardous substances from the facility have migrated.

## IV.  BACKGROUND

5.      In April of 1995, DEP prepared a Preliminary Assessment of the Site for inclusion of the Site on the National Priorities List ("NPL").  A final site inspection report was prepared in April of 1996.  DEP conducted an expanded site assessment of the Site in June of 1999.  These

inspections of the Site by the DEP revealed the soils and sediments at the Mill Processing Area, the Auxiliary Pond and the Tailings Pond were all contaminated with hazardous substances including arsenic, cadmium, copper, lead, silver and zinc.

6.      Hazardous substances including arsenic, cadmium, copper, lead, silver and zinc have been detected at levels above background on the Site, in Second Pond, and in Carleton Stream, and as far downstream from the Site as Salt Pond.

7.      NPL sites are studied and remediated, as necessary, under CERCLA pursuant to oversight from the United States Environmental Protection Agency ("EPA").  In November of 1999, DEP sent letters to Keradamex, Inc. the predecessor to Kerramerican, Inc., and Black Hawk, notifying these companies that the Site would possibly be listed on the NPL and inquiring as to whether these companies would rather conduct the investigation and remediation, as necessary, of the Site pursuant to State oversight and under Maine law.

8.      In late 1999, Kerramerican, as the successor to Keradamex, informed DEP that it would prefer to work with DEP under Maine law to study and, if necessary, remediate the Site.

9.      Black Hawk did not respond to the DEP's November 1999 letter.

10.     Kerramerican and its consultants conducted a RI of the Site and submitted a final RI report to DEP, which was approved by DEP on December 18, 2002.

11.     Besides confirming the presence of contamination of soils, sediments and surface water at the Site by hazardous substances, the RI report also concluded that the ground water and surface water at the former Mill Processing Area was contaminated with hazardous substance metals.  The local topographic and hydrological conditions indicate that all surface water drainage from this area flows initially to Second Pond and thence to Carleton Stream or directly to Carleton Stream.  The RI report also established that a plume of groundwater contaminated

with hazardous substance metals exited the Site at a point beyond the Saddle Dam.

12.     Following DEP's approval of the RI report, Kerramerican conducted a FS of the Site and submitted a FS report to DEP.  DEP accepted and approved Kerramerican's FS, including acceptance of the remedies proposed by Kerramerican in the FS.  The costs to design and implement those remedies have been estimated at approximately $9 million.

13.     Kerramerican developed a Remedial Action Plan ("RAP") and submitted it to the DEP for its comment.  Kerramerican and EBH have considered and accepted those comments.  A final RAP will be submitted to DEP for approval within thirty (30) days of the Effective Date of this Decree.

14.     Because Black Hawk and Denison refused to make equitable contributions toward the costs of the work undertaken to date by Kerramerican and the future costs to design and implement the selected remedies or in conducting other response activities at the Site, Kerramerican informed the State that it would not voluntarily conduct further Remedial Action at the Site.

15.     On November 5, 2004, Plaintiffs initiated this action against Black Hawk, Denison and Kerramerican seeking reimbursement of past and payment of future Response and Oversight Costs, as well as remediation of the Site and payment of damages to natural resources caused by Hazardous Substances at the Site.  Black Hawk, Denison and Kerramerican have filed cross-claims and Third Party Complaints against one another.

### V.  NO ADMISSION OF LIABILITY; COVENANT NOT TO SUE; RESERVATION OF RIGHTS

16.     <u>No admission of liability</u>.  This Consent Decree and all actions taken pursuant to this Consent Decree do not constitute, nor shall they be construed as, any admission of liability, wrongdoing, responsibility, or tortious or illegal conduct whatsoever as to any Settling

Defendant, as such liability is disputed and denied.  This Consent Decree, its terms and discussions or other communications relating to this Consent Decree, past, present, or future, shall not be offered or received in evidence in any action or proceeding, whether legal, equitable or administrative, or utilized in any other manner whatsoever, as an admission or concession of liability, wrongdoing, responsibility or tortious or illegal conduct on the part of a Settling Defendant.  This Consent Decree may be admitted into evidence in any legal or administrative proceeding for the purpose of showing any party's obligation under the terms of this Consent Decree, including, without limitation, a proceeding to enforce the terms of this Consent Decree, an action against an insurer of a party to this Consent Decree or an action for contribution by any party to this Consent Decree.

17.    Release from liability and covenant not to sue or take administrative action against Settling Defendants.  Plaintiffs agree that the obligations assumed by EBH pursuant to Section VI and the payments to be made by the Settling Defendants pursuant to Section VII of this Decree represent full satisfaction of Plaintiffs' claims against the Settling Defendants and their heirs, parents, subsidiaries, predecessors, successors and assigns, and their respective past, present, and future officers, directors, employees, and agents, for any and all civil or administrative liability related to or arising from the Site relating to claims based on ownership or operation of the Site, the generation of hazardous substances at the Site, or arrangement for transport or handling of any substance to the Site, including, but not limited to, liability under 38 M.R.S.A. §§ 1304(12), 1318-A, 1319-J, 1361 to 1371, sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, sections 7002 or 7003 of RCRA, 42 U.S.C. §§ 6972, 6973, or other applicable State laws including common law, for those discharges, releases, and threatened releases of Hazardous Substances, hazardous wastes, and other pollutants and contaminants at or

migrating from the Site, including any groundwater or surface water contamination that may be attributable to the Site, and claims for Natural Resource Damage, whenever such claims may have arisen or arise in the future.  In consideration of the obligations assumed by EBH pursuant to Section VI of this Decree and the payments to be made by the Settling Defendants under the terms of this Decree, and except as specifically provided in this Decree, the Plaintiffs covenant not to sue or take administrative action against Settling Defendants, and Settling Defendants shall be released from any and all said civil or administrative liability, including, but not limited to, liability under 38 M.R.S.A. §§ 1304(12), 1318-A, 13I9-J, 1361 to 1371, sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, §§ 7002 or 7003 of RCRA, 42 U.S.C. §§ 6972, 6973, or other applicable State laws, including common law, for those discharges, releases, and threatened releases of Hazardous Substances, hazardous wastes, and other pollutants and contaminants at or migrating from the Site, including any groundwater or surface water contamination that may be attributable to the Site, and claims for Natural Resource Damage, whenever such claims may have arisen or arise in the future.  This release and covenant not to sue applies equally to each Settling Defendant, their parents, subsidiaries, predecessors, successors and assigns, and their respective past, present, and future officers, directors, employees, and agents.  With respect to each Settling Defendant, these releases and covenants not to sue shall take effect upon EBH's and Settling Defendants' compliance with paragraphs 21 (Payment by Settling Defendants and EBH's Obligations and Covenants to the Settling Defendants) and 25 (Financial & Completion Assurance) and 26(A) (Reimbursement of Past Response and Oversight Costs) below or when the Settling Defendants sign the Decree, whichever is the later date.  These covenants extend only to the Settling Defendants and do not extend to any other person.

18.   <u>Release from liability and covenant not to sue EBH</u>.  In consideration of the

actions that will be performed by EBH under the terms of this Decree, and except as specifically provided in this Decree, the Plaintiffs covenant not to sue or to take administrative actions against EBH for, and EBH shall be released from, any and all claims arising under 38 M.R.S.A. §§ 1304(12), 1318-A, 1319-J, 1361 - 1371, §§ 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, §§ 7002 and 7003 of RCRA, 42 U.S.C. §§ 6972, 6973 or pursuant to any State law authorities (i) for any matter relating to Existing Contamination at the Site and the work covered by this Decree; and (ii) for recovery of all past and future Response and Oversight Costs, and Natural Resource Damage and any and all other costs incurred by Plaintiffs.  The release and covenant not to sue with respect to any matter relating to Existing Contamination at the Site and the work covered by this Decree, and Future Response and Oversight Costs, shall not take effect unless and until EBH has satisfactorily performed all of its obligations pursuant to this Decree, as determined by Plaintiffs and receives a certificate of completion pursuant to paragraph 46 of this Decree.  All other releases and covenants not to sue shall not take effect unless and until EBH satisfactorily perform all of its obligations pursuant to paragraphs 21, 25 and 26(B) of this Decree.

19.    <u>Reservation of Rights</u>.  The covenants not to sue set forth in the preceding paragraphs do not pertain to any matters other than those expressly specified therein.

A.    <u>Plaintiffs</u>.  The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights of the Plaintiffs against EBH and the Settling Defendants with respect to matters not addressed in this Decree. Except as provided in Paragraphs 17 and 18 hereof, nothing contained herein shall in any way limit or restrict the Plaintiffs from initiating any appropriate action, either judicial or administrative, under § 107 of CERCLA or State law against EBH, the Settling Defendants or any other person not a Party to this Consent Decree.  Further, Plaintiffs reserve the

right to institute proceedings in this action to modify this Decree to compel EBH or its

successors, but not the Settling Defendants, (i) to perform further response actions relating to the

Site or (ii) to reimburse DEP for additional Response and Oversight Costs if, prior to

certification of completion of the Remedial Action:

(1) conditions at the site previously unknown to DEP are discovered, or

(2) information, previously unknown to DEP, is received which, in whole or in part,

together with any other relevant information, indicates that the Remedial Action contained herein

is not protective of the public health or the environment.

In the event that DEP determines that EBH has failed to implement the Remedial Action

or perform any of the other obligations contained in this Decree in an adequate or timely manner,

DEP may perform any and all portions of the Remedial Action DEP determines necessary.  EBH

may invoke the procedures set forth in paragraph 40 to dispute DEP's determination that EBH

has failed to implement the Remedial Action or other actions in an adequate or timely manner.

Costs incurred by DEP in performing the Remedial Action or other action pursuant to this

paragraph shall be considered Response and Oversight Costs recoverable from EBH and/or the

non-settling defendants, but not from the Settling Defendants.

The covenants not to sue set forth above do not apply as to any Settling Defendants

related to any claims arising from criminal conduct by such party.  In addition, the covenant not

to sue EBH set forth above is without prejudice to all rights against EBH with respect to all other

matters, including, but not limited to:

(1) claims based upon a failure by EBH to meet the requirements of this Consent Decree;

(2) any liability resulting from exacerbation by EBH, its agents, employees,  successors

or assignees of Existing Contamination;

(3) any liability resulting from the release or threat of release of Hazardous Substances, pollutants, or contaminants, at the Site after the Effective Date of this Decree, not within the definition of Existing Contamination; and

(4) liability for violations of local, state and federal law and regulations.

Nothing in this Consent Decree is intended as a release or covenant not to sue for any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the State may have against any person, firm, corporation or other entity not a party to this Decree, and nothing in this Agreement is intended to limit the right of DEP to undertake future response actions at the Site or to seek to compel Parties other than EBH or the Settling Defendants to perform or pay for response actions at the Site.

B.      <u>EBH and Settling Defendants</u>.  Except as expressly set forth in this Decree, EBH and the Settling Defendants expressly reserve all rights and defenses that each or any of them may have in law or in equity for any claims or causes of action against any party and any non-party to this Decree.  Any claims not expressly waived by EBH or the Settling Defendants shall be deemed reserved.

20.      <u>Contribution Protection and Assignment of Claims</u>.  Upon the Effective Date of this Decree, each Settling Defendant and EBH are entitled to protection from contribution actions or claims for the matters addressed in this Decree, including but not limited to those matters addressed in paragraph 17 as to Settling Defendants and paragraph 18 as to EBH, to the extent provided by 42 U.S.C. §§ 9613 and 9622 and 38 M.R.S.A. § 348(4).  In addition, Settling Defendants and EBH reserve all rights they may have under applicable law to seek reimbursement from potentially responsible parties at the Site which are not Settling Defendants hereunder for all costs incurred including, but not limited to costs of the Remedial Action and

future Response and Oversight Costs under this Consent Decree and for all or part of the sums

reimbursed to the State hereunder.  Finally, in consideration of Settling Defendants payment of

the costs of the Remedial Action and Future Response and Oversight Costs, Plaintiffs will assign

to Settling Defendants all rights Plaintiffs may have under applicable law, including but not

limited to section 107 of CERCLA, 42 U.S.C. § 9607, against potentially responsible parties at

the Site for all costs incurred by Settling Defendants, including but not limited to costs of the RI,

FS, Remedial Action and Response and Oversight Costs under this Decree.

## VI.  RESPONSIBILITIES OF SETTLING DEFENDANTS AND OBLIGATIONS OF EBH

21.  Payment by Settling Defendants and EBH's Obligations and Covenants to the

Settling Defendants.

A.  Payment by Settling Defendants to EBH.  The Settling Defendants have entered

into an agreement with EBH under the terms of which EBH has assumed any liabilities of each

Settling Defendant related to the Site and the Settling Defendants have agreed to make certain

payments to EBH for the costs of (i) the Remedial Action; (ii) long-term operation and

maintenance; (iii) the State's Response and Oversight Costs; and (iv) other costs associated with

the Site including administrative and insurance costs.

B.  EBH's Obligations-and Covenants to the Settling Defendants.

(1)  Upon receipt by EBH of the payment referred to in this Paragraph, EBH shall

assume any and all liability and responsibility of the Settling Defendants for past, present, or

future claims, demands, causes of action, and contentions that DEP, EPA, or any other

government entity has or might have against the Settling Defendants on account of, with respect

to, or in any way connected with or arising out of the Settling Defendants' past or present

activities at or in connection with the Site, including ownership or operation of the Site, for

remediation, costs, expenses, or attorneys fees on account of, with respect to, or in any way connected with or arising out of the Site, any response actions taken or to be taken at or in respect of the Site, or the creation, use, existence or delivery of Hazardous Substances at the Site, or the release or threatened release of Hazardous Substances from the Site pursuant to CERCLA, 42 U.S.C. §§ 9601 et seq. or any other applicable Federal or State statutory or common law, which claims, demands, causes of action, or contentions either were, could have been, or could be brought or asserted against the Settling Defendants by the State of Maine (or any agency or department thereof, including particularly DEP), EPA, or by any other governmental entity.

(2)     In consideration of the payment to be made pursuant to this Paragraph, EBH covenants and agrees not, in any manner whatsoever, to sue the Settling Defendants, in any court or tribunal or to bring or make any claim, demand, action, lawsuit, cause of action (whether by direct action, counterclaim, cross claim, third party demand, intervention or other mode of action or proceeding) against the Settling Defendants based upon any matter directly or indirectly related to any claim released, transferred or assumed pursuant to the terms and provisions of this Decree.

## VII.   RELIEF: EBH'S RESPONSIBILITIES

22.     A.     <u>Final Remedial Action Plan Including Final Remedial Design Plans</u>.  EBH shall submit the final RAP including final remedial design plans for DEP approval within thirty (30) days of the Effective Date of this Decree.  Upon approval of the RAP, the Department may modify the scope of the RAP at any time during implementation of remedial activities if the DEP discovers information, previously unknown to DEP that indicates that the Remedial Action is not protective of the public health or the environment.

B.     <u>Submission of Project Operations Plan</u>.  Within 120 days of the Effective Date,

EBH shall submit a Project Operations Plan acceptable to the DEP.  The Project Operations Plan shall include, but not necessarily be limited to, a Project Schedule, a Site Management Plan, a Sampling and Analysis Plan including a Field Sampling Plan, a Quality Assurance Project Plan, a Health and Safety Plan and a Community Relations Plan.

C.      <u>Notification of Field Activities</u>.  Upon receipt of the DEP's written approval of the RAP, EBH shall implement the Remedial Action in accordance with the approved RAP and in accordance with the schedule therein, EBH shall notify the DEP verbally and in writing at least 14 calendar days prior to the initiation of any field activities and will identify and provide information regarding the qualifications of all contractors and subcontractors who will be implementing the Remedial Action.

D.      <u>Progress Reports and Meetings</u>.  EBH shall submit quarterly progress reports to the DEP which detail the status of EBH's compliance with this Consent Decree.  Based on site-specific activities being performed by EBH, the DEP may request that progress reports be submitted monthly, semi-annually, annually or other periodic timeframe.  The progress reports shall describe with sufficient detail the actions that have been taken toward achieving compliance with this Consent Decree during the past period such as a summary of the project activities undertaken by EBH during the past period and a description of plans which are scheduled for the next period.  EBH will meet periodically with the DEP to keep DEP staff apprised of the general status of the Remedial Action.

E.      <u>Submission of Remedial Action Report</u>.  Upon completion of the Remedial Action, EBH shall submit a Remedial Action Report ("RA Report") describing project activities including but not limited to all remedial actions together with documentation including: analytical sampling data; field observations; project QA/QC documentation; and figures, plans

and tables describing Site conditions.

F.     <u>Post Closure Care Activities</u>.  EBH shall implement and continue post closure

care activities appropriate to the Remedial Action, including long-term monitoring and

maintenance, as approved by the DEP, until notified pursuant to Paragraph 46 that EBH's

responsibilities under this Consent Decree have been satisfied.

G.     <u>Other Requirements</u>.  EBH shall exercise due care at the Site with respect to the

Existing Contamination and shall comply with all applicable local, state, and federal laws and

regulations.  EBH agrees to cooperate fully with DEP in the implementation of approved

response actions at the Site and further agrees not to interfere with DEP's oversight activities.

DEP agrees, consistent with its responsibilities under applicable law, to use reasonable efforts to

minimize any interference with EBH's operations by such entry and oversight.  In the event

EBH becomes aware of any action or occurrence which causes or threatens a release of

Hazardous Substances, pollutants or contaminants at or from the Site that constitutes an

immediate threat to public health or welfare or the environment, EBH shall immediately take all

appropriate action to prevent, abate, or minimize such release or threat of release, and shall, in

addition to complying with any applicable notification requirements under section 103 of

CERCLA, 42 U.S.C. § 9603, 37-B M.R.S.A. § 798, or any other law, immediately notify DEP of

such release or threatened release.

23.     <u>Additional Work</u>.

A.     DEP reserves the right to require work in addition to the implementation of

Remedial Action work specified in Paragraph 22, if necessary, to protect the public health and

the environment.  In the event that the DEP determines that additional work is necessary, DEP

shall notify EBH in writing.

B.      EBH shall, within 45 days of receipt of notification, unless an alternative schedule is mutually agreed upon, submit a work plan to cover the additional work. Upon approval of the work plan, EBH shall implement the work plan in accordance with the approved schedule.

24.     <u>Submissions Requiring Agency Approval</u>.

A.      After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, DEP shall:  (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) modify the submission to cure the deficiencies; (iv) disapprove, in whole or in part, the submission, directing that EBH modify the submission; or (v) any combination of the above.

B.      In the event of approval, approval upon conditions, or modification by DEP, pursuant to subparagraph 24(A)(i), (ii), or (iii), EBH shall proceed to take action required by the plan, report, or other item, as approved or modified by DEP.

C.      Upon receipt of a notice of disapproval pursuant to subparagraph 24(A)(iv) EBH shall, within thirty (30) days or such other time as specified by DEP in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Notwithstanding the receipt of a notice of disapproval pursuant to subparagraph 24(A)(iv), EBH shall proceed, at the direction of DEP, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve EBH of any liability for stipulated penalties under Paragraph 39 (Stipulated Penalties) with respect to the deficient portion.

D.      If upon re-submission, a plan, report, or item is disapproved or modified by DEP, EBH shall be deemed to have failed to submit such a plan, report, or item timely and adequately.

E.      All plans, reports, and other items required to be submitted to DEP under this

19

Consent Decree shall, upon approval or modification by DEP, be enforceable under this Consent Decree.  In the event DEP approves, conditions or modifies a portion of a plan, report, or other item required to be submitted to DEP under this Consent Decree, the approved, conditioned or modified portion shall be enforceable under this Consent Decree.

     25.    <u>Financial & Completion Assurance</u>.

     A.    <u>Environmental Cleanup Insurance Policy</u>.

The Settling Parties and EBH will procure an Environmental Cost Cap/Pollution Legal Liability Insurance Policy ("the Policy") modified through endorsement(s) to provide insurance to cover the risk that the project may cost more than the expected costs of the Remedial Action. The Policy, as bound, shall provide substantially the same coverage as described in the specimen policy in the form of Attachment B, naming the DEP as a Cost Cap Additional Insured as defined in the Policy.  Upon the Effective Date of this Consent Decree, EBH shall present to DEP evidence that the Policy has been bound and fax a copy of the Policy to the DEP.  EBH will forward a true and correct copy of the Policy upon receipt.  The Policy shall not have a term of less than ten (10) years and the per occurrence and aggregate limits of the Policy, in excess of the expected costs of the Remedial Action costs of approximately $9 million, referred to in the Policy as (the Self Insured Retention), shall not be less than $4,500,000.  The Policy shall be a claims-made policy.  Notwithstanding any terms in the Policy, EBH shall not cancel, or cause the cancellation of, the Policy for the period described herein.  No change may be made to the cost cap portion of the Policy without the express written consent of the DEP, which consent shall not be unreasonably withheld.

     B.    <u>Trust Fund</u>.  Upon the Effective Date of this Consent Decree, EBH shall deliver to DEP a Trust Agreement ("Trust Agreement").  The Settling Parties and EBH intend to name TD

Banknorth, a financial institution with offices in Maine, as Trustee.  Upon the Effective Date of

this Consent Decree, the Trustee shall provide the DEP with evidence that the Trust Fund has

been established, is adequately funded (at least $10 million dollars) and is secure and available to

complete all of EBH's obligations under this Consent Decree, including without limitation, the

Remedial Action and post closure activities including inspection, maintenance and long term

monitoring as well as payment of Future Response and Oversight Costs as described in

Paragraph 26(B).  The Trust Agreement shall name EBH as the primary beneficiary of the Trust

Funds.  DEP will be named as a secondary beneficiary with access to the funds in the event of

EBH's default of its obligations under this Consent Decree.

      26.     <u>Settlement of Response and Oversight Costs</u>.

      A.     Upon the Effective Date of this Consent Decree, the Settling Defendants shall

make  a lump sum monetary payment in the amount of $108,586.42 as settlement of past

Response and Oversight Costs.  The payment shall be either in the form of a certified check

made payable to the Maine Uncontrolled Sites Fund or some other form acceptable to DEP.

Payment shall be forwarded to:

> Mark Hyland, Division Director
> Maine Department of Environmental Protection
> Bureau of  Remediation & Waste Management
> Division of  Remediation
> 17 State House  Station
> Augusta, Maine  04333-0017

      B.     EBH shall also reimburse the DEP through the Maine Uncontrolled Sites Fund for

any future  Response and Oversight Costs that will be incurred by the DEP after the Effective

Date of this Consent Decree including, but not limited to, the Department's costs of overseeing

EBH's implementation of this Consent Decree.  Future Response and Oversight Costs shall not

exceed $250,000.00.  The money to pay future Response and Oversight Costs shall be held in the

Trust Fund and subject to the provisions of the Trust Agreement described in Paragraph 25 above.  In the event that costs of maintaining the Trust Fund exceed the benefits, EBH may request DEP permission to close the Trust Fund and make other provision for the custody and control of any remaining funds to pay Future Response and Oversight Costs.  Annually, on or before June 1 of each year after the entry of this Decree and until DEP issues both certifications described in paragraph 46 below, DEP shall submit to the EBH an itemized statement of Response and Oversight Costs, along with the summaries supporting such costs incurred by the State of Maine.  On or before June 1 of each year that DEP has submitted a statement of Response and Oversight Costs, along with the summaries supporting such costs, or within 30 days of EBH's receipt of the itemized statement if after May 1, EBH shall submit a check(s) for the amount of those outstanding costs or engage in dispute resolution pursuant to Paragraph 40.  Checks reimbursing DEP costs shall be made payable to the Maine Uncontrolled Sites Fund and forwarded to the address listed in subparagraph 26A.

## VIII.   ADDITIONAL AGREEMENTS BY THE PARTIES

27.   <u>Contractors</u>.  All work performed by EBH pursuant to this Consent Decree shall be performed under the direction and supervision of a qualified professional engineer or geologist.  EBH shall provide written notice to the DEP of the identity and qualifications of any contractors to be used in carrying out the terms of this Consent Decree.  EBH may designate new contractors or other new persons performing work under this Consent Decree provided they meet the above-mentioned qualifications and EBH notifies DEP in writing after retaining such contractors or persons.

28.   <u>Disclosure to Contractors</u>.  EBH shall disclose the existence of this Consent Decree to all contractors, analytical laboratories, and consultants retained to conduct any portion

of the work performed pursuant to this Consent Decree and provide a copy of this Consent

Decree to any project contractor or subcontractor that requests it.

29.   <u>Progress Reports</u>.  While Remedial Action is being carried on at the Site, EBH

shall provide to the DEP on a monthly, or on an otherwise mutually agreed upon periodic basis, a

written progress report for each preceding period.  These reports shall be submitted within fifteen

(15) days of the end of each agreed upon period.  Following the completion of Remedial Action

at the Site, but during operation and maintenance and long term monitoring, reports shall be

provided quarterly, or on an otherwise mutually agreed upon periodic basis.  Quarterly reports

should be submitted at the end of each quarterly period which shall be considered to  be January

30, April 30, July 30 and October 30 of each calendar year. These reports shall be submitted

within thirty (30) days of the end of each quarter.  The DEP reserves the right to require

additional information or detail as it deems necessary and appropriate.  At a minimum, these

progress reports shall describe in detail the actions that have been taken toward achieving

compliance with this Consent Decree during the past period; include a description of all results

of sampling and tests received by EBH during the past period; include a description of all plans

and procedures completed or partially completed during the past period; and describe actions,

data gathering activities and plans which are scheduled for the next period.

30.   <u>Delay in Performance and Force Majeure</u>.  The Parties agree that the timely

completion of the work required by this Consent Decree is important.  EBH shall use its

reasonable efforts and shall undertake all reasonable measures to ensure that the requirements set

forth in this Consent Decree, including time requirements, are met.  All deadlines for action by

EBH established by the Consent Decree shall be reasonably extended as a result of any delays

resulting from acts of God or war, failure of governmental authorities to issue required permits

(where a properly completed application has been submitted to the governmental authority), labor strikes, or other conditions beyond the control of EBH (e.g., denial of access after reasonable efforts to obtain same), or its contractors constituting force majeure.  EBH shall immediately notify the DEP verbally following EBH's awareness that forces constituting force majeure have occurred or are likely to occur, and thereafter shall promptly notify DEP in writing in accordance with paragraph 44 (Notice).  Such written notice shall be accompanied by all available documentation, including but not limited to third-party correspondence, a description of the circumstances, EBH's rationale for interpreting the circumstances as being force majeure, and the date by which or the time period within which EBH proposes to complete the delayed activities.  EBH's failure to provide notice as described in this Paragraph shall constitute waiver of EBH's right to seek a delay in performance on the basis of an event of *force majeure*.

31.     <u>Assumption of Risk</u>.  For purposes of this Consent Decree, EBH shall assume any and all liability arising from or relating to its acts or omissions, including the acts and omissions of its contractors and subcontractors, in the performance of the Remedial Action set forth herein or their failure to perform fully or to complete the requirements of this Consent Decree.

32.     <u>Permits</u>.  Settling Defendants have obtained a Section 404 Permit (# NAE-2004-334) in connection with remediation of the Site and will transfer the permit to EBH.  EBH shall obtain as the Permittee all necessary local, state and federal permits, if any, for implementation of the actions required in this Consent Decree. All permits, licenses, and approvals shall be issued in the name of EBH and all waste generated at the Site shall designate EBH (or a subsidiary or affiliate of EBH) as the generator of such waste on the appropriate manifest or bill of lading.  EBH will use best efforts to assure that all permits necessary for completion of the activities required by this Consent Decree are applied for in a timely fashion.  EBH shall notify

the DEP within ten (10) working days of the written denial of EBH's application for such permit or permits.

33.   <u>Payments or Expenditures</u>.  No payments or expenditures made in accordance with this Consent Decree, other than payments pursuant to paragraph 39 (Stipulated Penalties), shall be deemed the payment of a penalty or monetary sanction.

34.   <u>Access/Institutional Controls</u>.  For purposes of access only, EBH and its employees and agents shall be considered agents of DEP such that EBH shall have authority to enter, at all reasonable times, the Site and any other property to the extent access to the property is controlled by DEP for the purposes of inter alia, monitoring the Remedial Action, verifying, inspecting and copying records, documents, operating logs, contracts, and other documents related to this Consent Decree, conducting tests or sampling, and carrying out the terms of this Consent Decree.  EBH, its employees or agents are not otherwise agents of DEP.  To the extent that the Site or any other property to which access is required for the implementation of this Consent Decree is owned or controlled by persons other than EBH, DEP and EBH shall use its best efforts to secure from such persons access for EBH, as well as for the DEP and its representatives, if needed to implement the Remedial Action including post closure care activities.  Property use restrictions have been obtained and DEP is solely authorized to enforce the restrictions as an institutional control for the site.

35.   <u>Document Preservation</u>.  EBH agrees to preserve, for a minimum of five (5) years after the completion of the Remedial Action has been certified by the DEP, all records and documents in its possession or in the possession of its divisions or employees relating to the activities undertaken pursuant to this Consent Decree, despite any document retention policy to the contrary.  Nothing in this Consent Decree shall constitute any waiver of privilege that may

otherwise attach to any such records or documents.

36.    <u>Other Claims</u>.  Nothing herein releases or is intended to release any claims, causes of action or demands in law or equity of the Plaintiffs, EBH or the Settling Defendants, against any person, firm, partnership, entity or corporation that is not a signatory to this Consent Decree for any liability that may arise or may have arisen out of or relating in any way to the generation, storage, treatment, handling, transportation, or disposal of any materials, wastes or hazardous substances at, to, or from the Site.

37.    <u>Creation of Imminent Threat</u>.  In the event that the DEP determines that activities which are taking place at the Site are in noncompliance with this Decree, or even if in compliance, create an imminent threat to the environment or to the health or safety of the people on the Site or in the surrounding area, or in the event that such imminent threat arises from any other circumstances encountered during the implementation of this Consent Decree, DEP may direct EBH to stop further implementation of this Consent Decree for such period of time as needed to abate the danger.  DEP may issue such an order regardless of whether the endangering activity or circumstances are in compliance with this Consent Decree or caused by circumstances not expected or contemplated in this Consent Decree. During the period of time that the DEP orders EBH to stop implementation of this Consent Decree, EBH's obligations pursuant to this Consent Decree shall be suspended and, in the event that such a delay was not caused by the negligent or noncompliant acts or omissions of EBH, the time schedule for implementation shall be extended until the Decree is modified or revoked to allow further implementation.

38.    <u>Other Laws</u>.  All actions taken pursuant to this Consent Decree shall be undertaken by EBH in accordance with the requirements of all applicable local, state and federal laws and regulations and applicable state and federal environmental and public health standards

26

and guidelines.

39.     <u>Stipulated Penalties</u>.

A.     EBH shall be liable to the State of Maine for stipulated penalties in the amounts set forth in the following paragraph for failure to comply with the applicable requirements of this Consent Decree. "Compliance" by EBH shall include completion of the activities under this Consent Decree or any implementation schedule, work plan, or other plan approved under the Consent Decree in accordance with all applicable requirements of law, this Consent Decree, and any plans or other documents approved by DEP pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

B.     The following stipulated penalties shall be payable by EBH per violation per day to the State of Maine for any noncompliance;

| Period of Noncompliance | Penalty/Violation/Day |
|---|---|
| 1st through 14th day | $  500.00 |
| 15th through 30th day | $1,000.00 |
| 31st day and beyond | $2,500.00 |

C.     All penalties shall begin to accrue on the day after the complete performance is due or the day the violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

D.     Following DEP's determination that EBH has failed to comply with a requirement of this Consent Decree, DEP shall give EBH written notification of the same and describe the noncompliance ("Notice of Noncompliance").

E.     All penalties owed to the State of Maine under this section shall be due and

payable within 30 days of EBH's receipt from DEP of a demand for payment of the penalties. All payments under this section shall be paid by certified check made payable to the "Uncontrolled Sites Fund" and shall be mailed to the address listed in paragraph 44 (Notice).

F.     The payment of penalties shall not alter in any way EBH's obligation to complete the performance of the action required under this Consent Decree.

G.     If EBH fails to pay stipulated penalties when due, the DEP may institute proceedings against EBH to collect the penalties, as well as interest. Interest shall be paid on the unpaid balance, which shall begin to accrue on the date of the Department's Notice of Noncompliance.

H.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the DEP to seek from EBH any other remedies or sanctions available by virtue of EBH's violation of this Decree or of the statutes and regulations upon which it is based.

I.     No payments of stipulated penalties made by EBH under this section shall be tax deductible for State tax purposes.

40.     Dispute Resolution.  Any dispute arising under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between DEP and EBH for a period of up to fifteen (15) working days from the time notice of the existence of the dispute is given by EBH to DEP.  Further negotiations may be extended by agreement of the Parties to the dispute.  In the event the parties are unable to resolve the dispute informally, DEP shall issue a written decision which describes the nature of the dispute and DEP's response. Disputes concerning DEP's approval of any requirement of the Remedial Action or the amount of Response and Oversight Costs which EBH owes DEP under this Decree, and only these types

of disputes, may be elevated by EBH if EBH files a written appeal with the Commissioner within 15 days from the date DEP issues its written decision.  The Commissioner's decision, which shall be consistent with applicable federal and state law, including CERCLA, RCRA, the NCP and the Maine Uncontrolled Sites Law, shall be final unless EBH makes application to this Court, pursuant to its continuing jurisdiction, within ten (10) working days from the date EBH receives the Commissioner's written decision.  EBH shall have the burden of proof when seeking judicial review by this Court of any decision of the Commissioner and the Commissioner's decision shall be accorded a presumption of regularity.  To the maximum extent practicable the scope of review, standard of review and procedures for judicial review of the Commissioner's decision shall be those set forth in the Maine Administrative Procedure Act, 5 M.R.S.A. §§ 11001 et seq., for review of final agency actions.

 41. <u>Hold Harmless Agreement</u>.  The DEP and the Settling Defendants shall not be liable for any injuries or damage to persons or property resulting from acts or omissions of EBH in carrying out activities pursuant to this Consent Decree nor shall the DEP be held as party to any contract entered into by EBH in carrying out the activities pursuant to this Consent Decree. EBH agrees to indemnify and save and hold harmless the DEP, its agents, and its employees and the Settling Defendants from any and all claims or causes of action against the DEP arising from or on account of acts or omissions of EBH, its officers, employees, agents, or contractors in carrying out the activities pursuant to this Consent Decree, provided that EBH shall not owe the DEP any such obligation in the event of a citizen's suit to enforce any environmental law, regulation, or common law duty, or in the event that DEP has been negligent, within the meaning of 14 M.R.S.A. §§ 101 et seq.

 42. <u>Insurance and Indemnification</u>.

A.      Within thirty (30) days of implementation of the Remedial Action, EBH shall obtain or require its contractor(s) and subcontractors to obtain a policy or policies of insurance providing at least the following coverages in connection with the activities performed at the Site by EBH or its employees, agents, contractors or subcontractors under this Decree:

(1)      Comprehensive General Liability Insurance, including Contractors Protective Coverage, in an amount of not less than $1,000,000.00 per occurrence, combined single limit, general aggregate, $2,000,000.00;

(2)      Automobile Liability Insurance in an amount of not less than $ 1,000,000.00 per occurrence;

(3)      Workers' Compensation Insurance adequate to meet the statutory requirements of all jurisdictions having authority over such claims, including but not limited to the State of Maine, and Employer's Liability Insurance in an amount of not less than $1,000,000.00 per occurrence;

(4)      Professional Liability Insurance and Contractor's Pollution Liability Insurance as necessary and in commercially reasonable amounts.

The State of Maine and the Settling Defendants shall be named as additional insureds in the policy or policies required under subsections 1,2, 3, and 4 above.  EBH shall maintain such insurance or require its contractor(s) to maintain such insurance in force until the Department issues a certificate of completion for all on-site construction of Remedial Action activities other than O&M and shall require any O&M contractor to maintain such policy during the period of the O&M.

B.      Before starting any on-site work, and annually thereafter, EBH shall submit to the DEP certification of coverages maintained in compliance with this Section. In addition, EBH

shall furnish the Department with copies of those policies purchased specifically for activities undertaken pursuant to this Decree.

C.     Anything herein notwithstanding, in no event is EBH relieved of its obligation to implement in a timely fashion the remedial design work and Remedial Action under this Decree by reason of any inability to obtain, or failure to maintain in force any insurance policies required in this Section, any insurance required by this Paragraph, or by reason of any dispute between EBH and any of its insurers concerning any claim arising out of the design, construction, implementation or operation of the remedy, or arising out of any other activity required under this Decree.

43.     <u>Designation of Coordinators</u>.  Within ten (10) working days of the Effective Date of this Consent Decree, EBH shall designate a coordinator who shall administer all actions called for by this Consent Decree and EBH shall submit the coordinator's name and address to the DEP. The DEP shall, during the same time period, designate a coordinator for administration of its responsibilities and shall submit the coordinator's name and address to EBH. Different coordinators may be designated by any of the Parties provided that notice of such designation is made to the other Parties in accordance with Paragraph 44 within ten (10) working days of the designation.

44.     <u>Notice</u>.  All notices required pursuant to this Consent Decree shall be deemed to have been made (i) three (3) days from the mailing of a certified letter, return receipt requested, or (ii) one (1) day after sending by receipted express delivery to the following persons.  Different recipients may be designated by any of the Parties provided that notice of such designation is made to other Parties in the manner provided in this Paragraph.

For DEP:

MARK HYLAND, Division Director
Bureau of Remediation & Waste Management
Maine Department of Environmental Protection
17 State House Station
Augusta, Maine  04333-0017

HANK AHO, Manager, Uncontrolled Sites Program
Bureau of Remediation & Waste Management
Maine Department of Environmental Protection
17 State House Station
Augusta, Maine  04333-0017

For EBH:

David Critchfield
Elizabeth Armstrong
Emsource Blue Hill, LLC
111 Commercial Street, Suite 400
Portland, Maine  04101

For the Settling Defendants:

Sean Mahoney, Esq.
Verrill Dana LLP
One Portland Square
P.O. Box 586
Portland, Maine  04112

45.   <u>Subsequent Modification and Incorporation</u>.  This Court shall retain jurisdiction

for the purpose of enabling any Party to this Consent Decree to apply to this Court at any time

for such modifications of this Decree as may be necessary, for enforcement of any terms of this

Decree, or for any other action necessary or appropriate to effectuate the implementation of the

Remedial Action and long-term operation and maintenance required by this Decree.  Any

material modifications of this Consent Decree must be in writing.  The Parties recognize,

however, that extension of the deadlines set forth herein may be necessary from time to time.

The Parties agree to negotiate in good faith over such extensions.  Extension of any deadline

hereunder shall not be considered a modification of the Consent Decree requiring Court approval but must be in writing.

46.     <u>Satisfaction and Termination</u>.  At the completion of (i) the Remedial Action and, in addition, (ii) the long-term monitoring and operation and maintenance, EBH shall promptly notify the DEP.  Promptly following such notice, the DEP shall assess the activities and if the activities have been performed in accordance with the approved plans, shall certify to EBH in writing that its responsibilities for each such activity under this Consent Decree have been satisfied in accordance with this Consent Decree.  Copies of each certification shall be filed with this Court.

47.     <u>Separate Documents</u>.  This Consent Decree may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

48.     <u>Appeal</u>.

A.      Provided that this Decree is approved by the Court in its entirety as submitted, the Parties expressly waive any rights that they may have to appeal the entry of this Decree.

B.      The Parties acknowledge that this Decree may be subject to petitions for reconsideration or appeal by other non-signing Parties after its entry.  In the event a petition for reconsideration or notice of appeal of the entry of this Decree is filed within the time period set forth in the Federal Rules of Civil or Appellate Procedure, the Settling Defendants may file motions with the District Court seeking to reverse entry of this Decree or a notice of appeal with the U.S. Court of Appeals. In the event the Decree is reversed or set aside, or in the event this Decree is modified in any manner by a court of competent jurisdiction but is not ratified by all Parties hereto, the Parties shall be returned, to the maximum extent practicable, to their legal

status as it existed immediately prior to entry of this Decree.  Specifically, the Settling

Defendants shall be relieved of any obligations assumed hereunder and the releases set forth in

this Decree shall be of no force and effect.  Any moneys that may have been exchanged shall be

returned to the Settling Defendants and any financial assurance instruments that may have been

obtained shall be surrendered to the providing party to the fullest extent practicable.  The Parties

agree to cooperate in the orderly dissolution of the legal relationships and obligations contained

herein. In the event this Decree is reversed or modified upon appeal, the Parties reserve all of

their respective rights and defenses that they may have with respect to the matters addressed

herein.  This provision is not intended to modify in any manner the provisions of the Federal

Rules of Civil and Appellate Procedure.

Dated and entered this  28th day of  June, 2006.

/s/John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
United States District Judge

**CONSENTED TO:**

**For Plaintiffs State of Maine and Maine Department of Environmental Protection:**

Date: May 15, 2006                  /s/Dennis J. Harnish
                                         Dennis J. Harnish
                                         Assistant Attorney General
                                         Office of the Attorney General
                                         6 State House Station
                                         Augusta, Maine 04333-0006
                                         (207) 626-8800

**For the Settling Defendants:**

Date: May 12, 2006                  /s/ Sean Mahoney, Esq.
                                         Sean Mahoney, Esq.
                                         Verrill Dana LLP
                                         One Portland Square
                                         P.O. Box 586
                                         Portland, Maine 04112-0586
                                         (207) 774-4000

**For Emsource Blue Hill LLC:**

Date: May 12, 2006                  /s/ Elizabeth A. Armstrong
                                         Elizabeth A. Armstrong
                                         Emsource Blue Hill LLC
                                         111 Commercial Street, Suite 400
                                         Portland, ME  04101
                                         (207) 772-4939

## <u>CERTIFICATE OF SERVICE</u>

I, Dennis J. Harnish, hereby certify that on this, the 15th day of May 2006, I filed a **letter to the Honorable Margaret J. Kravchuk with an attached Public Notice; a Consent Decree; Attachment A to the Consent Decree; and Attachment B to the Consent Decree** with the Clerk of Court by email.  Copies of these documents were also emailed to the following:

Jeffrey Martin, Esq.
jmartin@hunton.com

Sean Mahoney, Esq.
smahoney@verrilldana.com

Phillip Buckley, Esq.
pbuckley@rudman-winchell.com

Elizabeth Armstrong, Esq.
armstrong@emsource.com


/s/ Dennis J. Harnish
Assistant Attorney General
6 State House Station
Augusta, Maine  04333-0006
Tel. -- 207-626-8580
Fax -- 207-626-8812
dennis.harnish@maine.gov