UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE and<br>MAINE DEPARTMENT OF<br>ENVIRONMENTAL<br>PROTECTION,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>KERRAMERICAN, INC., et. al.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　CV-04-191-B-W<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS KERRAMERICAN, INC. AND BLACK HAWK'S JOINT MOTION FOR RULE 37(c) SANCTIONS AGAINST DENISON MINES, INC.**

The Court grants the motion for sanctions against Denison Mines, Inc., due to its inexcusable failure to seasonably disclose information about a critical witness. Although Kerramerican and Black Hawk request exclusion of the witness's testimony, the Court declines to do so at this point, but will impose a sanction against Denison. To allow the parties to attempt to agree to the sanction, the Court allows the parties ten days to present a stipulation as to an agreed-upon sanction and, in the absence of an agreement, the Court will impose its own.

**I. STATEMENT OF FACTS**

　　**A. Factual Background**

On October 12, 2006, Kerramerican and Black Hawk[1] filed a Joint Motion for Rule 37(c) Sanctions Against Denison Mines Inc. (Denison). *Joint Mot. for Sanctions* (Docket # 123) (*Joint Mot.*). The motion claims that Denison failed to disclose a witness Jean Claude

---

[1] For ease of reference, the Court refers to Kerramerican, Inc., Keradamex, Inc., and Falconbridge, Ltd. as "Kerramerican" and to Black Hawk Mining, Ltd. and Glencairn Gold Corp. as "Black Hawk."

Dumas "until more than two months after discovery closed and several weeks after cross-motions for summary judgment were filed and failed to supplement or seasonably amend its disclosures and discovery responses." *Id*. at 1.

This complex case concerns a mine located in Blue Hill, Maine and the state of Maine's determination to seek reimbursement from the owners and operators for substantial environmental costs that have resulted from mining operations. Under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), liability is imposed on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). The Amended Complaint alleges that Kerramerican, Black Hawk, and Denison were involved either independently or as joint venturers in the operation of the Blue Hill mine. *Am. Compl.* ¶¶ 5, 6, 7 (Docket # 3). The stakes are high. By agreement with the state, Kerramerican has transferred into two accounts funds totaling $11,158,586.00, a figure that reflects the magnitude of the exposure. *Stipulation of Costs Incurred By Kerramerican* ¶¶ 5, 6 (Docket # 145).

Denison has defended the action, in part, by asserting that it was never an owner or operator or otherwise responsible within the meaning of the statute. *Denison Mem. of Law In Supp. of Mot. for Summ. J.* at 9-15 (Docket # 91) (*Denison Mem.*). Although Denison acknowledges it was involved with Black Hawk, the nature and extent of Denison's involvement are very much in dispute and the names and exact roles of various Denison and Black Hawk employees have been critical to the resolution of the dispute.

As the events are now decades old, the circle of individuals with actual knowledge of who was at the mine, whether they were working as Denison employees, and what they did

there, has shrunk. The parties have vigorously sought this significant information through discovery.[2] The mine superintendent in the mid-1960s was Malcolm "Bud" Rowswell. Mr. Rowswell, who has passed away, was the "only identified witness from the 1960s who was not deposed," *Joint Mot.* at 4, and the parties earnestly sought clarification as to whether Mr. Rowswell was working on behalf of Denison during his time at the Blue Hill mine. This factual issue is a matter of utmost importance, since, if Mr. Rowswell was working on Denison's behalf, then Denison's central defense that it was never directly involved in the mining operations falls of its own weight. Kerramerican and Black Hawk assert that the state of the parties' knowledge before late July 2006 was that Mr. Rowswell was working as a Denison employee.[3] *Joint Mot.* at 4-5.

Discovery closed on July 26, 2006. *Order* (Docket # 82). The deadline for dispositive motions was finally set as September 11, 2006. *Order* (Docket # 85). On September 11, 2006, the parties filed a variety of motions, including motions for summary judgment. (Docket # 86, 90, 99, 100). Kerramerican moved for summary judgment against Denison, in part, based on evidence that Mr. Rowswell was a Denison employee directly

---

[2] Kerramerican and Black Hawk represent that the parties deposed witnesses in Bangor, Augusta, and Portland, Maine; Vancouver, British Columbia; Toronto, Ontario; and Washington D.C., and exchanged over 25,000 pages of documents. *Joint Mot.* at 5.
[3] The Court views with utmost skepticism Denison's representation that "[i]t was not clear to Denison until it received Kerramerican's and Black Hawk's respective Statements of Material Facts on September 11, 2006, that there was any genuine dispute . . . as to whether Bud Rowswell worked for Black Hawk . . . ." *Denison Opp'n to Joint Mot.* at 3-4 (Docket # 138). Based on the dueling statements of material fact, the discovery, and the memoranda, it is simply beyond belief that Denison did not know that the opposing parties were claiming that Mr. Rowswell was acting for Denison while at the Blue Hill mine.
 Significantly, in response to the motion for sanctions, Attorney Scott submitted an affidavit in which he confirmed that he sent Mr. Dumas an affidavit on August 14, 2006, and then a revised affidavit on August 30, 2006, and received the executed affidavit back on September 18, 2006. *Aff. of David G. Scott II*, Ex. 1 ¶¶ 6, 9, 10 (Docket # 138) (*Scott Aff.*). This chronology confirms that Attorney Scott prepared the language of the Dumas affidavit before Kerramerican had filed its motion for summary judgment and, therefore, before he knew that Kerramerican had raised Mr. Rowswell's status as an issue. Yet, the Dumas affidavit expressly mentions Mr. Rowswell and asserts that Mr. Dumas "understood that Mr. Rowswell and Mr. Anderson were both acting as Black Hawk officials in their dealings with him." *Denison Opp'n to Kerramerican, Inc. Mot. for Summ. J.* at 10 (Docket # 115). Attorney Scott would apparently have the Court believe that he was working diligently in August to collect an affidavit from Mr. Dumas concerning an issue he thought was not an issue.

responsible for managing and directing the underground development of the mine. *Kerramerican, Inc. Mot. for Summ. J. Against Denison* at 6 (*Kerramerican Mot.*) (Docket # 100); *Kerramerican Statement of Material Facts* ¶ 26 (Docket # 101). In response, on October 2, 2006, Denison produced for the first time an affidavit from Jean Claude Dumas, which asserted that Mr. Rowswell was not a Denison employee. *Denison Opp'n to Kerramerican, Inc. Mot. for Summ. J.* at 10 (Docket # 115); *Denison Resp. to Statement of Material Facts Submitted by Kerramerican, Inc.* ¶ 3 (Docket # 116), *Aff. of Jean Claude Dumas*, Ex. 5 (Docket # 116). Ten days after receiving the Dumas affidavit, Kerramerican and Black Hawk moved for sanctions.

### B. The Motion for Sanctions and Denison's Response

The joint motion states:

> On October 2, 2006, Denison offered an affidavit from a previously undisclosed witness, Jean Claude Dumas (Docket No. 116-6). Apparently, Mr. Dumas was involved with mine development at the Site on behalf of a Canadian subcontractor, R.F. Frye and Associates. Mr. Dumas's affidavit alleges that he has knowledge relating to the affiliations of individuals who worked at the Site during the development phase, including the affiliation of Malcolm ("Bud") Rowswell, who served as the mine superintendent from 1964 to 1966. Denison did not disclose Mr. Dumas as a potential witness in their initial disclosures, served on August 31, 2005. Denison did not disclose Mr. Dumas as a person with knowledge in response to Kerramerican's and Black Hawk's interrogatories, served on April 19, 2006. This is despite the fact that his name would have been responsive to a number of Kerramerican's interrogatories, including Interrogatory No. 5, which specifically stated, "Identify every person known to Denison who may have knowledge of the exploratory drilling, underground work, and/or development of the ore body at the Site, and the substance of that knowledge."

*Joint Mot*. at 2. The joint motion goes on to state that Denison failed to supplement or amend its discovery materials pursuant to Federal Rule of Civil Procedure 26(e).[4] *Id*. at 3.

Denison responds to say it "has scrupulously complied with all its discovery obligations in this case" and the "disclosure was 'seasonable' under the requirements of the Fed. R. Civ. P. 26." *Denison Opp'n to Joint Mot.* at 2-3 (Docket # 138). Denison asserts:

> As [Denison's counsel David G. Scott] explains, Mr. Dumas was contacted in connection with Denison's continuing efforts to investigate the facts surrounding the development of the Blue Hill Mine. Mr. Scott spoke to Mr. Dumas on August 8, 2006, about Mr. Dumas' activities at the Blue Hill Mine Site, but Mr. Dumas did not provide a signed affidavit to Denison's counsel until September 18, 2006 -- a week after the deadline for filing summary judgment motions. Denison provided the affidavit to Kerramerican and Black Hawk only two weeks later, on October 2, 2006, as part of the papers filed in support of Denison's opposition to Kerramerican's motion for summary judgment. Denison's submission of the Dumas affidavit with its Opposition was fully justified. It was not clear to Denison until it received Kerramerican's and Black Hawk's respective Statements of Material Facts on September 11, 2006, that there was any genuine dispute either as to whether Bud Rowswell worked for Black Hawk or as to the validity of the contract between Black Hawk and Fry that had been produced by Black Hawk. Mr. Dumas' affidavit addresses both of those issues . . . .

*Id*. at 3-4. Denison goes on to claim that neither Kerramerican nor Black Hawk was prejudiced by any alleged delay in the production of the Dumas affidavit. *Id*. at 4-7.

---

[4] The Rule reads, in part, "A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances: (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

## II. DISCUSSION

Denison committed a discovery violation. Denison has been aware since the outset that whether the people at the Blue Hill mine, including Bud Rowswell, were acting as Denison employees was a question of legal significance. Once Attorney Scott learned, on August 8, 2006, that Jean Claude Dumas had information relevant to this critical issue, he was obligated to disclose this information promptly to Kerramerican and Black Hawk. He was obligated to do so because the Scheduling Order, dated June 14, 2005, mandated initial disclosures under Rule 26(a)(1) by July 12, 2005.[5] *Scheduling Order* at 1 (Docket # 38). He was further obligated to do so because, on April 19, 2006, Kerramerican served a set of interrogatories on Denison that should have elicited this information. *Joint Mot.* at 2. Under its discovery obligations pursuant to both the Scheduling Order and the Interrogatories, Denison was required to supplement its discovery responses. Fed. R. Civ. P. 26(e). Despite these clear disclosure requirements, even after Mr. Scott received the affidavit on September 18, 2006, he did not disclose it, but waited two more weeks until Denison's response to Kerramerican's motion for summary judgment was due on October 2, 2006.

From Attorney Scott's affidavit, it is clear why Denison failed to seasonably provide this information to the opposing parties: Attorney Scott was anxious to prepare an affidavit for Mr. Dumas's signature that would freeze his sworn recollection before the other parties had an opportunity to seek him out and question him.[6] As he was seeking the affidavit from Mr. Dumas, Mr. Scott was aware that Kerramerican and Black Hawk were preparing

---

[5] Rule 26(a)(1) requires that each party must provide to the others "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1).

[6] Attorney Scott learned Mr. Dumas's phone number as early as late July or early August 2006. *Scott Aff.* ¶ 2. He spoke to Mr. Dumas on August 8, 2006, and, on August 14, 2006, called Mr. Dumas to ask if he would be willing to sign an affidavit. *Id.* ¶¶ 2, 3. He prepared and sent the affidavit on August 14, 2006. *Id.* ¶ 6. On August 30, 2006, Mr. Dumas called Attorney Scott and corrected his legal name on the affidavit. *Id.* ¶ 8.

dispositive motions and was certainly aware that Mr. Rowswell's employment would be an important issue or else he would not have taken such pains to obtain an affidavit from Mr. Dumas about Mr. Rowswell's employment status.

Against this backdrop, it is simply incredible for Denison to contend that it was unaware there were genuine issues of material fact concerning whether Mr. Rowswell worked for Black Hawk. It is similarly far-fetched for Denison to contend that neither Kerramerican nor Black Hawk was prejudiced by revealing potentially critical information after all parties had filed their motions for summary judgment and after they had painstakingly developed their statements of material facts, based on the incomplete information. Holding back this information was a deliberate attempt to gain strategic advantage from non-disclosure and violates the letter and spirit of the Court's Orders and the rules of civil procedure.

## III. CONCLUSION

The Court GRANTS the Joint Motion for Sanctions against Denison Mines and orders the parties to notify the Court within 10 days as to whether they have arrived at a proposed agreement as to the appropriate sanctions against Denison Mines[7] (Docket # 123).

---

[7] Allowing the parties to come to an agreement, if possible, seems the wiser course, because they are in the better position to evaluate how to respond to the revelation of Jean Claude Dumas's recollection in the context of the overall discovery in this case. To guide the parties, under Rule 37, the Court expects to award attorney's fees for Kerramerican and Black Hawk's joint motion for sanctions. Assuming Kerramerican and Black Hawk wish to depose Mr. Dumas, the Court will allow them to do so, despite the fact discovery has closed, and will require Denison to pay the costs of his deposition. The Court expects the parties to work together, however, to minimize the expense of further discovery and encourages them to consider bringing Mr. Dumas to Maine, rather than having a troupe of lawyers travel to Canada. Any agreement on sanctions will be subject to the Court's approval.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2007