UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STATE OF MAINE and<br>MAINE DEPARTMENT OF<br>ENVIRONMENTAL<br>PROTECTION,<br><br>       Plaintiffs,<br><br>   v.<br><br>KERRAMERICAN, INC., et. al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV-04-191-B-W |

## AMENDED[1] ORDER ON DEFENDANT BLACK HAWK'S MOTION FOR SUMMARY JUDGMENT

**I. STATEMENT OF FACTS**

    **A. State Against Black Hawk**

In June 1999, the Maine Department of Environmental Protection (DEP) conducted an expanded site assessment of the Kerramerican Mine Site located in Blue Hill, Maine (the Site). *Am. Compl.* at 9 (Docket # 3). The assessment revealed that "the soils and sediments . . . were all contaminated with hazardous substances . . . ." *Id.* On December 15, 2004, the state of Maine and DEP filed an Amended Complaint against Kerramerican, Inc., Black Hawk Mining, Ltd., and Denison Mines, Inc. (Denison).[2] *Id.* at 1. The Amended Complaint

---

[1] This Amended Order corrects a typographical error in the Court's Order denying Motion for Summary Judgment dated March 6, 2007 (Docket # 148). The typographical error appears in the first full paragraph on page 8 of the March 6, 2007 Order which states "Kerramerican has deposited $8,980.00 in costs". It should read "Kerramerican has deposited $8,980,000.00 in costs."

[2] Maine brought its Amended Complaint in part pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 et seq. For ease of reference, the Court refers to Kerramerican, Inc., and its predecessor and parent corporations, Keradamex, Inc., and Falconbridge, Ltd.. respectively, as "Kerramerican," and to Black Hawk Mining, Ltd. and Glencairn Gold Corp. as "Black Hawk."

alleges that "Defendant, Black Hawk Mining, Ltd . . . conducted mining operations individually, and later as a partner in a joint venture, with Defendant Kerramerican, Inc. in Blue Hill Maine." *Id*. at 3. The Amended Complaint goes on to claim that "[t]he mining operations described . . . have released the metals arsenic, cadmium, copper, lead, silver and zinc to the groundwater and surface water at the Site . . . These metals are all designated as hazardous substances pursuant to [CERCLA]." *Id*. at 9.

In Counts I and II of the four-count Complaint, Plaintiffs seek "Reimbursement of Past Response Costs and Declaration of Liability for Future Costs and Natural Resources Damages" under CERCLA and the Maine Uncontrolled Hazardous Substance Sites Law, respectively. *Id*. at 12-13. In other words, "Plaintiffs are seeking reimbursement from Black Hawk for response costs which the Plaintiffs claim to have incurred or will incur as a result of the release of hazardous substances at the Kerramerican Mine Site located in Blue Hill, Maine." *Black Hawk Mot. for Summ. J*. at 2 (Docket # 86). On February 4, 2005, Kerramerican filed a cross-claim against Black Hawk Mining seeking "to recover clean-up costs for contamination resulting from discharges, releases, and disposal of hazardous substances and hazardous materials . . . ." *Kerramerican Answer, Affirmative Defenses, and Cross Claim* at 11 (Docket # 7).

### B. The Consent Decree Between the State and Kerramerican

On June 28, 2006, the state of Maine and DEP entered into a Consent Decree with Kerramerican.[3] *Consent Decree* at 3 (Docket # 83). Also a party to the Consent Decree was EMSOURCE Blue Hill LLC (EBH), an entity with the experience and technical capability to

---

[3] The Consent Decree refers to Kerramerican, Keradamex, Inc., and Falconbridge, Ltd. as the "Settling Defendants," a term also found in the parties' memoranda. For simplicity and consistency, however, the Court has continued to use only Kerramerican when referring to the three related corporations.

undertake the Remedial Action at the Site. *Id*. In its "Background" section, the Consent Decree states:

> In late 1999, Kerramerican . . . informed DEP that it would prefer to work with DEP under Maine law to study and, if necessary, remediate the Site . . . Kerramerican and its consultants conducted a [Remedial Investigation] of the Site and submitted a final [Remedial Investigation] report to DEP, which was approved by DEP on December 18, 2002 . . . Following DEP's approval of the [Remedial Investigation] report, Kerramerican conducted a [Feasibility Study] of the Site and submitted a [Feasibility Study] report to DEP. DEP accepted and approved Kerramerican's [Feasibility Study], including acceptance of the remedies proposed by Kerramerican in the [Feasibility Study]. The costs to design and implement those remedies have been estimated at approximately $9 million.

*Id*. at 8-9. The Consent Decree further provides that "Plaintiffs agree that the obligations assumed by EBH . . . and the payments to be made by the Settling Defendants . . . represent full satisfaction of Plaintiffs' claims against the Settling Defendants . . . ." *Id*. at 10. Finally, the Consent Decree states:

> Settling Defendants and EBH reserve all rights they may have under applicable law to seek reimbursement from potentially responsible parties at the Site which are not Settling Defendants hereunder for all costs incurred including, but not limited to costs of the Remedial Action and future Response and Oversight Costs under this Consent Decree and for all or part of the sums reimbursed to the State hereunder.

*Id*. at 14-15.

### C. Black Hawk's Motion for Summary Judgment

Finally, on September 11, 2006, Black Hawk filed a Motion for Summary Judgment on Counts I and II of the Plaintiffs' Amended Complaint. *Black Hawk Mot. for Summ. J.* Kerramerican filed an Objection. *Kerramerican Objection to Black Hawk Mot. for Summ. J.* (*Kerramerican Objection*) (Docket # 110). In response, Black Hawk filed two replies. The

3

first reply was its "Reply to Plaintiffs' Failure to Oppose" Black Hawk's motion for summary judgment. (*Black Hawk Reply I*) (Docket # 125). In its first reply, Black Hawk contends that it is entitled to summary judgment, as the *Plaintiffs* to the case (the State of Maine and DEP) failed to timely file a response. The second reply was its "Reply to [Kerramerican's] Objection" to Black Hawk's motion for summary judgment. *Black Hawk Reply II* (Docket # 126). In its second reply, Black Hawk initially contends that Kerramerican has "no standing to object to Black Hawk's motion which was brought against Plaintiffs . . . ." and Black Hawk moved to strike the objection in its entirety. *Black Hawk Reply II* at 2. In the alternative, Black Hawk responds to Kerramerican's Objection stating,

> Kerramerican acknowledges that "there must be evidence that the release or threat of release of hazardous substances has caused or will cause the incurrence of response costs." Kerramerican then argues that, in this case, there need not be *any* such evidence presented on summary judgment because "[t]he Consent Decree between Plaintiffs and Kerramerican, as approved and entered by this Court, establishes this element." Black Hawk asserts that a liability judgment cannot be entered against Black Hawk based only upon a Consent Decree entered by unrelated parties. Neither Plaintiffs nor Kerramerican have cited admissible evidence on this element which requires a showing of both causation and that any response costs are recoverable.

*Black Hawk Reply II* at 5 (internal citations omitted).

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).

4

"Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991) (internal citation omitted). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. *FDIC v. Anchor Props*, 13 F.3d 27, 30 (1st Cir. 1994).

### B. Black Hawk's Motion as Against the State of Maine, its Standing Objection, and Motion to Strike as Against Kerramerican

Black Hawk's contention that it is entitled to summary judgment against the state of Maine and DEP is mystifying. The state of Maine and DEP were certainly the moving parties to the action when they originally filed the Complaint on November 5, 2004. However, on June 28, 2006, the Court approved a Consent Decree between the state of Maine and DEP and Kerramerican. *Consent Decree*. The Consent Decree provided that Kerramerican would pay what the parties have agreed is the sum of $11,158,586.00 into two accounts in "full satisfaction of Plaintiffs' claims against the Settling Defendants . . . ." *Id.* at 10; *Stipulation of Costs Incurred by Kerramerican* ¶¶ 5, 6 (Docket # 145) (*Stipulation of Costs*). Kerramerican reserved the right to proceed with its cross-claim against Black Hawk and Denison. *Consent Decree* at 14-15.

Once the Court approved the Consent Decree, the state of Maine and DEP were formally terminated as parties. The action became a civil action, based on cross-claims, among the Settling and Non-Settling Defendants. Once terminated as parties, neither the

state nor DEP was going to respond to Black Hawk's motion for summary judgment, since they no longer had a stake in the outcome. To the extent Black Hawk's motion for summary judgment seeks a default judgment against terminated parties, the Court dismisses the Black Hawk motion as moot. For the same reason, Black Hawk's argument that Kerramerican does not have standing to object to its motion for summary judgment against the Plaintiffs is overruled and its motion to strike denied.

### C. Proof of Response Costs via Expert Testimony

According to Black Hawk, "[t]here is little question that expert testimony is required to show that recoverable response costs were incurred, or . . . will be incurred. Absent expert testimony as to response costs, Plaintiffs have failed to present sufficient evidence in specific, factual form for a jury to return a verdict in their favor as to these elements . . . ." *Black Hawk Mot. for Summ. J.* at 5. Black Hawk concludes that "[b]ecause Plaintiffs failed to designate an expert on the issue of response costs, Black Hawk is entitled to Summary Judgment as to Counts I & II." *Id*. In response, Kerramerican states:

> Kerramerican does not dispute that in order to establish Black Hawk's liability under CERCLA there must be evidence that the release or threat of release of hazardous substances has caused or will cause the incurrence of response costs. The Consent Decree between Plaintiffs and Kerramerican, as approved and entered by this Court, establishes this element. There is, however, nothing to support Black Hawk's assertion that "there is little question that expert testimony is required to show that recoverable response costs were [or will be] incurred." The cases cited by Black Hawk in support of this assertion say nothing about any such requirement.

*Kerramerican Objection* at 5 (internal citations omitted).

The Court agrees with Kerramerican that there is nothing to suggest that expert testimony is required to address the issue of response costs and Kerramerican correctly points out that the only cases Black Hawk cited do not stand for that proposition.[4]

### D. Other Proof of Response Costs

There remains the question of whether Kerramerican must present *some* evidence at this stage that they have incurred response costs.[5] Kerramerican states that "[a] party seeking to establish CERCLA liability need only demonstrate that a release of hazardous substances has caused or will cause the incurrence of response costs. Here, the record evidence is clear that Kerramerican has incurred response costs. No further examination as to this liability component is necessary."[6] *Kerramerican Objection* at 6. Black Hawk, by contrast, contends

---

[4] To be precise, Black Hawk cites no authority for the statement that "[t]here is little question that expert testimony is required to show that recoverable response costs were incurred, or that recoverable response costs will be incurred." *Black Hawk Mot. for Summ. J.* at 5. Black Hawk cites *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000) for the proposition that "failure of proof of an essential element renders all other facts immaterial," a true statement of law, but unilluminating as to whether expert testimony is required in this case. Black Hawk also cites *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1335-36 (10th Cir. 2004) for the proposition that summary judgment is appropriate after exclusion of an expert opinion on an essential element of the claim. *Miller* involved a law suit of parents of a teenager who committed suicide after beginning to take sertraline, an antidepressant marketed as Zoloft. Once the Court excluded the Plaintiff's expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), summary judgment was appropriate because the Plaintiffs had no "scientific evidence of general causation." *Miller*, 356 F.3d at 1335. Black Hawk cites no authority that extends the requirement of expert scientific testimony to response costs in a CERLA action.

[5] Black Hawk and Kerramerican spend a healthy amount of time debating this question. Central to the debate are two different scheduling orders. The first Order dated July 22, 2005 provided that the action would be tried in two stages: "The first phase of discovery will be on the liability as to the primary defendants . . . and the costs of remediation." *Report of Telephone Conference, Order on Pending Mots. and Am. Scheduling Order* at 2 (Docket # 49). The Order goes on to provide that the second stage "would involve those defendants, if any, who are judged liable in the first stage of the action and would involve discovery and motions of the cross claims among such defendants, including, but not limited to, claims for allocating any relief awarded to the plaintiffs." *Id.* Upon motion for clarification, the Court issued an Order on September 22, 2005, which stated that the first phase would "establish the liability of any or all of the Defendants." *Order* at 3 (Docket # 56). Specifically at issue is whether, to proceed against Black Hawk, Kerramerican must demonstrate evidence of *both* liability and costs of remediation or only liability. The two scheduling orders may leave some ambiguity as to what is required of the parties, and the record evidence as to costs is relatively weak. However, as the discussion illustrates, the evidence is sufficiently robust as to make summary judgment inappropriate.

[6] Kerramerican quotes *Lefebvre v. Central Me. Power Co.*, 7 F. Supp. 2d 64, 71 (D. Me. 1998) which states, "In order to prevail in a cost recovery action under section 107(a) of CERCLA, a party must establish that: (1) the defendant falls within a category or categories of potentially responsible parties; (2) there has been a release or threatened release of a hazardous substance from a facility; (3) the release or threatened release has caused the claimant to incur response costs; and (4) the claimant's response costs were necessary and consistent with the national contingency plan."

that the only evidence Kerramerican has offered is the Consent Decree. Because Black Hawk claims that "a liability judgment cannot be entered against [it] based only upon a Consent Decree entered by unrelated parties," Kerramerican has not produced *any* record evidence that would establish that Kerramerican has incurred response costs. *Black Hawk Reply II* at 5.

The case is presented in an unusual posture, because the parties agree that Kerramerican has deposited in excess of $11,000,000.00 in two accounts pursuant to a court-approved Consent Decree. *Consent Decree*; *Stipulation of Costs*. Of this amount, the Stipulation states that Kerramerican has deposited $8,980,000.00 in costs for remedial action. *Stipulation of Costs* at 2. Even though there is no other evidence of the amount of remediation costs, as a practical matter, this evidence is sufficient to survive summary judgment on whether Kerramerican has sustained some remediation costs on the Blue Hill site, especially since the Court is constrained to view the evidence in the light most favorable to the non-moving party, Kerramerican. Even if the record evidence is less than what is typically adduced in a CERCLA case, there remains a genuine issue of material fact, since the record evidence now reveals what is already apparent to all parties: Kerramerican has incurred considerable response costs and should be permitted to seek reimbursement from other potentially liable parties.

### III. CONCLUSION

The Court DENIES Defendant Black Hawk's Motion for Summary Judgment, OVERRULES its objection to Kerramerican's objection to its Motion for Summary Judgment, and DENIES its Motion to Strike Kerramerican's objection to its Motion for Summary Judgment (Docket #86).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of April, 2007